IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY HARLOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-727-SMD |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Kimberly Harlow ("Plaintiff") applied for a period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act") and Supplemental Security Income under Title XVI alleging a disability date of August 29, 2013. (R. 251-64). Plaintiff subsequently amended the alleged onset date to January 14, 2014. (R. 278). The applications were denied on December 5, 2014. (R. 164-72). Plaintiff timely appealed and requested a hearing. (R. 173-74). A hearing was held before the Administrative Law Judge ("ALJ") on April 1, 2016. (R. 244-45). The ALJ rendered an unfavorable decision on September 29, 2016. (R. 7-30). Plaintiff timely requested review of the ALJ's decision by the Appeals Council. (R. 250). The Appeals Council denied Plaintiff's request for review. (R. 1-6). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment

by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 10); Def.'s Consent to Jurisdiction (Doc. 9). After careful scrutiny of the record and briefs, for reasons herein explained, the Court concludes that the Commissioner's decision is to be AFFIRMED.

## I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v.*

2

*Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*." Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will reverse a Commissioner's decision on review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based

upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).

However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical. *See Strickland v. Harris*, 615 F.2d 1103, 1105-06 (5th Cir. 1980). Therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1)  Is the person presently unemployed?

(2)  Is the person's impairment(s) severe?

(3)  Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4)   Is the person unable to perform his or her former occupation?

(5)   Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through step four. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and non-exertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available

to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

### III. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was forty-three years old as of the alleged onset date. (R. 280). Plaintiff had a seventh-grade education and worked as taxi driver; a bartender, cook, and server; a garment sorter; a retail clerk; and a factory inspector. (R. 311-19). Plaintiff ceased working on September 21, 2011 but claimed a disability onset as of January 14, 2014. (R. 278, 311).

The ALJ considered Plaintiff's claim pursuant to the five-step, sequential evaluation process described above. (R. 11-12). At step one, the ALJ found that Plaintiff was not gainfully employed since the alleged onset date. *Id.* At step two, the ALJ found that, individually, Plaintiff's impairments were non-severe, but, collectively, she had a combination of medically determinable impairments that were "severe" within the meaning of 20 C.F.R § 404.1520. *Id.* The ALJ found the Plaintiff had the following impairments: obesity; chronic obstructive pulmonary disease (COPD) including asthma and bronchitis, stable; minimal spondylosis and degenerative disc disease, lumbar spine; edema; history of lack of control; gastroesophageal reflux disease; hypothyroidism, controlled; history of pulmonary hypertension; history of dyspnea; and essential hypertension, controlled. (R. 12-13). At step three, the ALJ found Plaintiff's combination of impairments, while severe, did not meet or equal one of the listed disabilities set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 14).

Before continuing to steps four and five, the ALJ determined Plaintiff's RFC. (R. 15-22). The ALJ found that, despite her impairments, Plaintiff's RFC allowed her to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> [C]laimant can stand and/or walk at least one hour without interruption and at least six hours over the course of an eight-hour workday. The claimant can sit at least six hours over the course of an eight-hour workday. The claimant cannot not climb ropes, poles, scaffolds or ladders. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can frequently use her lower extremities for the operation of foot controls. The claimant can occasionally work in humidity, wetness and extreme temperatures; however, she cannot work outdoors. The claimant can occasionally work around dusts, gases, odors and fumes. The claimant cannot work in poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant can occasionally work with operating hazardous machinery. The claimant can frequently work while exposed to vibration. The claimant can frequently operate motorized vehicles.

(R. 15).

At step four, the ALJ found—based on Plaintiff's RFC and the testimony of the VE—Plaintiff was able to perform her past relevant work as a garment sorter. (R. 22). Alternatively, at step five, the ALJ found that if Plaintiff could not return to her past relevant work, there were other jobs that exist in significant numbers in the national economy she could perform. *Id.* Based upon the testimony of the VE, the ALJ identified the following representative occupations: "Tagger," "Inspector," and "Laundry Worker." (R. 23). Thus, the ALJ found Plaintiff not disabled as defined under sections 216(i) and 223(d) of the Act. (R. 23).

## IV. MEDICAL HISTORY

The Court adopts, in large part, the facts as set out in Plaintiff's brief pertaining to her medical history. (Doc. 12) at 6-9. Plaintiff indicated in her application the following physical conditions: COPD, pulmonary hypertension, edema in legs and feet, facet disorder (L2-S1), pain all over from her neck to her feet, a thyroid problem, and acid reflux. (R. 284). Plaintiff reported a height of 62 inches and a weight of 219 pounds, which equates to a body mass index (BMI) of 40.1. *Id.*

Plaintiff's earliest physical examination in the record is an April 17, 2010, consultative examination report ("CER") from a family practice physician, Dr. Melvin Williams. (R. 377-82). Dr. Williams noted Plaintiff had poor air movement bilaterally and 1+ lower extremity edema up to the level of the mid tibia. *Id.* A chest x-ray indicated a normal heart size, normal media stinum, and assessed dyspnea, COPD, and acute bronchitis. *Id.* An MRI of the lumbar spine showed a normal lumbosacral spine. *Id.* Dr. Williams diagnosed COPD with a history of asthma, chronic, persistent, with continued tobacco abuse. *Id.* A later MRI, dated January 16, 2012 and performed by Dr. Ross Barnett showed a normal lumbar spinal alignment with no bulging or herniation seen. (R. 632).

A chest x-ray dated May 11, 2012 and reviewed by Dr. Louise Geary found an otherwise normal study with a normal heart size, normal pulmonary vascularity, and minimal prominence in the area of the azygos node. (R. 383). The record shows a CER was performed by an internal medicine physician, Dr. Oluyinka S. Adejili, on March 21, 2013, in response to an earlier application for DIB/SSI benefits alleging an onset date of September 21, 2011. The CER found no issues with Plaintiff's musculoskeletal system or

swelling of the joints. (R. 391-95). Dr. Adejili further noted normal respiration and diaphragmatic excursion with only slight diminishment due to auscultation. *Id.* Heart rate and respiration were measured as normal, with an elevated blood pressure and a BMI reading of 39.5. *Id.* ECG was normal, chest x-ray showed clear lungs but with increased bronchial marking bilaterally, and spinal x-ray showed minimal lumbar spondylosis and degenerative disc disease. *Id.* Dr. Adediji concluded that because of the non-specific obstructive airway disease, Plaintiff might not tolerate low to intermediate levels of exertion. *Id.* A chest x-ray performed on March 31, 2013, showed clear lungs, no pleural effusion or pleural thickening and normal cardiac size. (R. 572). A physical examination performed by Dr. Dixie Kidd on November 18, 2013, showed bilateral respiratory auscultation and decreased breath sounds but showed no edema or swelling in the extremities. (R. 417-21). However, at a follow-up appointment on December 18, 2013, the examining physician's assistant, Jessica Melvin, noted 3+ bilateral edema in the lower legs. (R. 423-26).

On January 14, 2014—the alleged amended onset date—Plaintiff met with Dr. Dimtcho Popov for an evaluation and consult. (R. 441-58). Dr. Popov's physical examination reported a normal respiratory rate and pattern with normal vesicular breath sounds and no rales, rhonchi, wheezing, or pleuritic rubs. *Id.* Cardiovascular examination revealed normal heart rate and rhythm with no murmurs, gallops, thrills, or heaves. *Id.* Plaintiff's ECG was normal. (R. 633). Examination of the extremities showed no cyanosis, no clubbing, but 3+ peripheral edema. (R. 441-58). A spirometry report indicates dyspnea, high COPD risk, and a severe airway obstruction with low vital capacity. *Id.* Dr. Popov

diagnosed obstructive chronic, controlled bronchitis, unspecified acquired hypothyroidism, and COPD and referred Plaintiff to Dr. Keri Brown, a pulmonologist, for evaluation of her COPD. *Id.* Dr. Popov also referred Plaintiff to the Montgomery, AL, Center for Pain for management of her back pain on the same day. *Id.* On January 22, 2014, Plaintiff was examined by Dr. Brown. (R. 434-36). Vitals showed a blood pressure of 123/79, pulse oximetry of 97%, and a BMI of 39.06. *Id.* Cardiovascular examination showed normal heart rate and rhythm with no murmurs, gallops, or rubs. *Id.* Respiratory examination showed normal bronchial breath sounds bilaterally without increased work of breathing or retractions and no rales, rhonchi, or wheezes. *Id.* Examination of the extremities show no clubbing, cyanosis, or edema. *Id.* Dr. Brown assessed COPD and chronic bronchitis and scheduled a follow-up in three months. *Id.* Two weeks later, Plaintiff met again with Dr. Popov. (R. 437-40). Dr. Popov's physical examination indicated a normal respiratory rate and pattern with normal vesicular breath sounds and no rales, rhonchi, wheezing, or pleuritic rubs. *Id.* Cardiovascular examination revealed normal heart rate and rhythm with no murmurs, gallops, thrills, or heaves. *Id.* Examination of the extremities show no cyanosis, no clubbing, and no peripheral edema. *Id.* Despite reporting no symptoms in his physical examination, Dr. Povov diagnosed Plaintiff with obstructive chronic, controlled bronchitis and chronic, uncontrolled swelling of the limb, but he did not diagnose COPD, asthma, or hypothyroidism. *Id.* Dr. Povov scheduled a follow-up in three months and referred Plaintiff to Dr. Joseph Deering for a heart catheterization and evaluation for possible pulmonary hypertension. *Id.*

On February 19, 2014, Plaintiff met with Dr. Deering prior to undergoing the heart catheterization. (R. 463-65). Dr. Deering's examination reported clear to auscultation lung function, normal heart rate and rhythm, and 3+ lower extremity edema. *Id.* Dr. Deering performed a stress test on Plaintiff and reported results that were negative for chest pain and ischemia and positive for moderate dyspnea. *Id.* On February 26, 2014, Plaintiff underwent a heart catheterization. (R. 459-62). The procedure report indicated normal cardiac output with mild to moderate pulmonary hypertension and elevated heart filling pressures. *Id.* Dr. Deering followed up with Plaintiff on March 13, 2014, to review her test results. (R. 466-69). He diagnosed COPD with mild to moderate secondary pulmonary hypertension as well as bilateral lower extremity edema. *Id.* Dr. Deering attributed the impairments to Plaintiff's obesity and recommended a low sodium and low carb diet, regular exercise, and cessation of Plaintiff's excessive sweet tea consumption. *Id.*

The Plaintiff was seen by the Montgomery, AL, Center for Pain on February 20, 2014. (R. 473-88). At that appointment, Plaintiff denied any chest pain/pressure, edema, exercise intolerance, asthma, pleuritic pain, dyspnea, or wheezing. *Id.* The examining physician, Dr. Aaron Shinkle, reported normal respiration without pain and overall strong cardiovascular function. *Id.* Plaintiff was seen again on March 29, 2019, and again denied any chest pain/pressure or exercise intolerance but did complain of asthma, dyspnea, and wheezing. *Id.* Dr. Shinkle again reported normal respiration without pain and overall strong cardiovascular function. *Id.* Plaintiff was seen a third time on April 14, 2014, and again denied any chest pain/pressure or exercise intolerance but did complain of asthma, dyspnea, and wheezing. *Id.* Dr. Shinkle again reported normal respiration without pain

and overall strong cardiovascular function. *Id.* Plaintiff was seen a fourth time on May 21, 2014, and a fifth time on July 16, 2014. (R. 506-09, 588-91). At both appointments, Plaintiff denied any shortness of breath, wheezing, or cough, but did admit back, neck, and joint pain. *Id.* Dr. Shinkle's examinations showed unlabored breathing, no edema or cyanosis in the extremities, paraspinal musculater tenderness and decreased spine range of motion. *Id.* At each appointment, Plaintiff was prescribed *inter alia* Lasix, Advair, and Norco. (R. 473-88, 506-09). Plaintiff reported at her second visit that she wanted to continue being prescribed these medications because they allowed her to perform activities of daily living with no untoward effects. *Id.* at 488. Plaintiff further reported that she suffered no complications from the use of these medications and that they were giving adequate analgesia. *Id.*

Plaintiff had a follow-up appointment with Dr. Popov on March 31, 2014. (R. 497-500). Dr. Popov's physical examination reported a normal blood pressure of 112/74, pulse of 92, and BMI of 39.07. *Id.* Examination of the respiratory system revealed a normal respiratory rate and pattern. *Id.* The lung fields were resonant bilaterally, with equally palpable vibrations, normal vesicular breath sounds, and no rales, rhonchi, wheezing, or pleuritic rubs. *Id.* Examination of the cardiovascular system revealed no thrills or heaves with a normal S1, S2, normal heart rate, regular rhythm, and no murmurs or gallops. *Id.* Examination of the back revealed no abnormal curvatures or point tenderness and full range of motion. *Id.* Dr. Popov diagnosed shortness of breath, hypertension, and swelling of the limb, but not hypothyroidism, COPD, bronchitis, or asthma. *Id.*

Plaintiff had a second appointment with her pulmonologist, Dr. Brown, on April 22, 2014. (R. 489-91). Dr. Brown noted in her examination normal heart rate and rhythm, bronchial breath sounds bilaterally without increased work of breathing or retractions, and chronic non-pitting lower extremity edema. *Id.* Dr. Brown assessed COPD with asthma, chronic pulmonary heart disease, and chronic bronchitis. *Id.* Plaintiff also met with Dr. Popov on the same day. (R. 493-96). Dr. Popov's physical examination reported a normal blood pressure of 101/80, pulse of 74, and BMI of 39.06. *Id.* Examination of the respiratory system revealed a normal respiratory rate and pattern with normal vesicular breath sounds and no rales, rhonchi, wheezing, or pleuritic rubs. Examination of the cardiovascular system revealed no thrills or heaves with a normal S1, S2, normal heart rate, regular rhythm, and no murmurs or gallops. *Id.* Examination of the back revealed no abnormal curvatures or point tenderness and full range of motion. *Id.* Dr. Popov diagnosed unspecified acquired hypothyroidism and swelling of limb, but did not diagnose COPD, bronchitis, asthma, or pulmonary hypertension. *Id.* Dr. Brown also performed a diagnostic polysomnography on May 29, 2014, which showed a normal sleep architecture and no evidence of cardiac dysrhythmia or PVC. (R. 519-21). Plaintiff was again seen by Dr. Popov on September 17, 2014. (R. 601-04). Dr. Popov's examination results were identical to the previous two visits, except that on this visit, he diagnosed unspecified acquired hypothyroidism and chronic bronchitis, but not COPD, asthma, or pulmonary hypertension. *Id.*

Plaintiff was seen by Dr. Shinkle on January 8, 2015. (R. 799-802). Dr. Shinkle's physical examination indicated unlabored breathing, no edema or cyanosis, but paraspinal

musculater tenderness and decreased spine range of motion. *Id.* Dr. Shinkle diagnosed lumbosacral radiculitis, asthma, cervicalgia, hypertension, and lumbago, but not COPD, bronchitis, or hypothyroidism. *Id.* Plaintiff was seen by a nurse practitioner, Kimberly Buckalew on April 2, 2015. (R. 817-20). Buckalew observed unlabored breathing, regular heart rate and rhythm, and marked lower extremity edema. *Id.* Buckalew diagnosed *inter alia* pulmonary hypertension, thyroid disorder, and COPD. *Id.* Plaintiff saw Dr. Shinkle again on April 28, 2015. (R. 795-98). Dr. Shinkle's PE was identical to the January exam, but this time he diagnosed lumbosacral radiculitis and cervical radiculitis but not lumbago, COPD, hypertension, hypothyroidism, or bronchitis. *Id.* Dr. Shinkle saw Plaintiff again on July 28, 2015. (R. 790-94). The physical examination was again identical to the first two, and he diagnosed lumbosacral radiculitis, cervicalgia, and lumbago. *Id.*

Plaintiff was seen by Dr. Jeff Stewart, a primary care physician, on August 24, 2015. (R. 749-52). Dr. Stewart's physical examination reported unlabored breathing with normal breath sounds throughout, regular heart rate and rhythm, and stated no edema of the lower extremities was present. *Id.* Dr. Stewart diagnosed COPD, and bronchitis, but not pulmonary hypertension, asthma, or edema. *Id.* Plaintiff was seen again by Dr. Stewart ten days later on September 3, 2015. (R. 745-48). Dr. Stewart's medical examination reported breathing slightly labored and breath sounds distant throughout as well as bilateral 3+ edema. *Id.* Dr. Stewart diagnosed COPD, pulmonary hypertension, and edema, but not bronchitis or asthma. *Id.* Plaintiff was seen by Dr. Mohammed Shubair, a pulmonologist, on October 13, 2015. (R. 769-76). Plaintiff's vitals showed a normal blood pressure of 111/76, pulse of 77, and BMI of 34.4. *Id.* Dr. Shubair's physical examination reported

14

normal breath sounds and good air movement, no wheezing, rales, or rhonchi and normal heart rate and rhythm. *Id.* Dr. Shubair also observed normal tone, strength, and movement of all joints, bones, and muscles. *Id.* Dr. Shubair diagnosed severe COPD, pulmonary hypertension, and congestive heart failure. *Id.* Dr. Shubair scheduled Plaintiff for a pulmonary function analysis which was performed on October 29, 2015. (R. 773-76). Plaintiff again met with Dr. Shinkle nine days later on October 22, 2015. (R. 786-89). At this appointment, Dr. Shinkle diagnosed chronic bilateral cervical radiculitis and chronic bilateral lumbar radiculitis. *Id.* The next day, October 23, 2015, Plaintiff was seen by Dr. Stewart. (R. 741-44). Dr. Stewart's medical examination reported unlabored breathing but moderate diminished breath sounds. *Id.* Dr. Stewart also noted no edema or cyanosis in the extremities. *Id.* Dr. Stewart diagnosed COPD and bronchitis, but not pulmonary hypertension, asthma, or edema. *Id.* Plaintiff met again with Dr. Shubair on November 4, 2015, to review the results of the pulmonary function analysis. (R. 766-68). Dr. Shubair diagnosed Plaintiff with severe COPD. *Id.* Plaintiff had an annual follow-up two days later with Dr. Deering on November 6, 2015. (R. 723-24). A physical examination showed a BP of 113/78, a pulse of 81, oxygen saturation of 98 percent, and a BMI of 34.43. *Id.* Dr. Deering diagnosed COPD and pulmonary hypertension, but not bronchitis or asthma. *Id.*

On January 18, 2016, Plaintiff was seen by Dr. Stewart (R. 737-40). Dr. Stewart's physical examination reported unlabored breathing with normal breath sounds throughout and regular heart rate and rhythm, marked lower extremity edema, and normal spinal range of motion. *Id.* Dr. Stewart diagnosed lower extremity edema, but not COPD, bronchitis,

or pulmonary hypertension. *Id.* Plaintiff was seen by Dr. David Holmes in Auburn, AL, on January 25, 2016. (R. 758-61). Dr. Holmes noted unlabored breathing and normal breath sounds as well as normal heart rate and rhythm. *Id.* Dr. Holmes also noted no edema present in the lower extremities. *Id.* Dr. Holmes diagnosed pulmonary hypertension, venous insufficiency, and localized edema, but not COPD, bronchitis, or asthma. *Id.* Plaintiff was seen again by Dr. Shubair, on February 2, 2016. (R. 764-76). Dr. Shubair's physical examination showed decreased breath sounds and diminished air movement as well as 3+ edema. *Id.* Dr. Shubair diagnosed severe COPD, pulmonary hypertension, and congestive heart failure. *Id.*

## V. PLAINTIFF'S ARGUMENTS

Plaintiff identifies the following three issues in her "Statement of the Issues:"

1. The Commissioner's decision should be reversed because the common medical opinions of record show that Ms. Harlow's medical determinable impairments would prevent the performance of substantial gainful activity on a regular and continuing basis.

2. The Commissioner's decision should be reversed because the ALJ erred by failing to provide adequate rationale addressing the medical opinions of record expressed by Ms. Harlow's treating specialist which support a disability finding.

3. The Commissioner's decision should be reversed because the ALJ erred by improperly acting as both Judge and medical doctor.

(Doc. 12) at 4.

16

# VI.  ANALYSIS

## A.  The ALJ did not err in concluding Plaintiff can perform her past relevant work.

Plaintiff argues that the ALJ erred by incorrectly rejecting the medical opinions of her four treating physicians.  (Doc. 12) at 4-5.  Plaintiff asserts that the medical opinions of record provide substantial evidence that her medically determinable impairments would prevent the performance of substantial gainful activity on a regular and continuing basis.  *Id.*  Plaintiff argues that the ALJ failed to note any medical opinions of record which controverted the medical opinions of her treating physicians and, hence, may not be arbitrarily rejected.  *Id.*

The testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986); *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir. 1985)).  Good cause to discount the treating physician's opinion exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Winschel v.Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011).  The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician.  *Lewis*, 125 F.3d at 1441.

Here, the ALJ properly considered the medical opinion evidence and clearly articulated his reasons for having good cause to discount Plaintiff's four treating physicians' opinions.  First, the ALJ properly afforded Dr. Popov's medical opinion "no

weight" because it was not bolstered by the evidence and because it was inconsistent with his own medical records. The ALJ explained that Dr. Popov never reported a physical examination or test result that was consistent with his opinion limiting Plaintiff to less than sedentary work. (R. 20). The undersigned agrees that the record of Dr. Popov's physical examinations shows diagnoses inconsistent with his recorded medical observations as well as diagnoses that were inconsistent between examinations.

For example, Dr. Popov's first medical examination of Plaintiff on January 14, 2014 showed inconsistencies between his observations and his diagnoses. (R. 441-58). Dr. Popov recorded a normal respiratory rate and pattern with normal vesicular breath sounds and no rales, rhonchi, wheezing, or pleuritic rubs. *Id.* His cardiovascular examination showed a normal heart rate and rhythm with no murmurs, gallops, thrills, or heaves. *Id.* Plaintiff's ECG was normal. (R. 633). Despite those observations, Dr. Popov diagnosed obstructive chronic, controlled bronchitis and COPD. (R. 441-58).

In addition, Dr. Popov's observations and diagnoses were inconsistent between examinations. For example, a follow-up examination a few weeks after Plaintiff's first appointment with Dr. Popov showed different results from the previous visit. (R. 437-40). Dr. Popov's physical examination indicated a normal respiratory rate and pattern with normal vesicular breath sounds and no rales, rhonchi, wheezing, or pleuritic rubs. *Id.* Cardiovascular examination revealed normal heart rate and rhythm with no murmurs, gallops, thrills, or heaves. *Id.* Examination of the extremities show no cyanosis, no clubbing, and no peripheral edema. *Id.* Despite reporting no symptoms in his physical

examination, Dr. Povov added a diagnosis of uncontrolled swelling of the limb, but he did not diagnose COPD, which he had diagnosed at Plaintiff's previous exam. *Id.*

In addition to the inconsistencies in diagnoses, the undersigned finds that Dr. Popov's opinion as to Plaintiff's limitations is not supported by his own examinations or the medical evidence as a whole. The ALJ noted that Dr. Popov, in his Medical Source Statement ("MSS"), limited Plaintiff to sitting no more than four hours over the course of an eight-hour workday despite his lack of medical or clinical findings which would support his assessment of Plaintiff's limitations. (R. 20). The ALJ further found that while Dr. Popov noted Plaintiff's respiratory impairment, which was her greatest impairment, he did not completely limit her capacity to work based on that impairment. *Id.* Dr. Popov reported Plaintiff would miss four days a month but neither his records nor the MSS explain why he would conclude as such. (R. 680). Thus, the undersigned finds that the ALJ had good cause to discount Dr. Popov's opinion, and his decision was supported by substantial evidence. Accordingly, the Court concludes the ALJ properly considered and discounted the opinion of Dr. Popov.

Similarly, the ALJ properly afforded Dr. Brown's medical opinion "no weight" because her opinion was not bolstered by the evidence and because her opinion was inconsistent with her own medical records. Dr. Brown's physical examinations show diagnoses inconsistent with her recorded medical observations as well as diagnoses that were inconsistent between examinations. For example, Dr. Brown's medical examination of Plaintiff on January 22, 2014, showed inconsistencies between her observations and her diagnoses. (R. 434-36). Dr. Brown recorded vitals showing a blood pressure of 123/79,

pulse oximetry of 97%, and a BMI of 39.06. *Id.* Cardiovascular examination showed normal heart rate and rhythm with no murmurs, gallops, or rubs. *Id.* Respiratory examination showed normal bronchial breath sounds bilaterally without increased work of breathing or retractions and no rales, rhonchi, or wheezes. *Id.* Examination of the extremities show no clubbing, cyanosis, or edema. *Id.* Despite such an unremarkable examination, Dr. Brown diagnosed Plaintiff with COPD and chronic bronchitis. *Id.* At a follow-up examination on April 22, 2014, Dr. Brown again noted normal heart rate and rhythm, bronchial breath sounds bilaterally without increased work of breathing or retractions. (R. 489-91). Dr. Brown also performed a diagnostic polysomnography on May 29, 2014, which showed a normal sleep architecture and no evidence of cardiac dysrhythmia or PVC. (R. 519-21). Dr. Brown diagnosed COPD with asthma, chronic pulmonary heart disease, and chronic bronchitis despite recording no symptoms during her examination which supported those diagnoses. (R. 489-91).

Additionally, Dr. Brown's opinion as to Plaintiff's limitations is not supported by her own examinations or the medical evidence as a whole. The ALJ explained that Dr. Brown's opinion in her MSS was not supported by the treatment record of Plaintiff for that visit. (R. 20-21). The ALJ explained that although Dr. Brown limited Plaintiff to sitting only two hours without interruption, Dr. Brown did not explain what particular medical impairments would limit her in that way. *Id.* Further, although Dr. Brown limited Plaintiff to no more than four hours of work per day, she failed to explain, based on her medical examination, why Plaintiff would be limited in that way. *Id.* The ALJ additionally found that Dr. Brown failed to explain when Plaintiff became limited as he suggested or how long

the limitation would last. *Id.* Thus, the undersigned finds that the ALJ had good cause to discount Dr. Browns's opinion and his decision was supported by substantial evidence. Accordingly, the Court concludes the ALJ properly considered and discounted the opinion of Dr. Brown.

The ALJ properly afforded Dr. Shubair's medical opinion "no weight" because his opinion was not bolstered by the evidence and because his opinion was inconsistent with his own medical records. The ALJ found that Dr. Shubair's assessed limitations of Plaintiff were not consistent with his physical examinations or his treatment of Plaintiff and were inconsistent with the untainted comprehensive physical examinations contained throughout the record. (R. 21). Dr. Shubair's opinion will be more fully discussed *infra* Section VII.B. Thus, the undersigned finds that the ALJ had good cause to discount Dr. Shubair's opinion and his decision was supported by substantial evidence. Accordingly, the Court concludes the ALJ properly considered and discounted the opinion of Dr. Shubair.

Finally, the ALJ properly afforded Dr. Holmes' medical opinion "no weight" because his opinion was not bolstered by the evidence and because his opinion was both conclusory and inconsistent with his own medical records. The ALJ found—and the undersigned concurs—that Dr. Holmes' one-sentence MSS stating that Plaintiff was disabled was conclusory and was not accompanied by any evidence that supported his opinion. (R. 21). The ALJ noted that Dr. Holmes opinion was not accompanied by any radiographic or laboratory evidence or or by any physical examination. A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory. *Edwards*, 937 F.2d at 583 (citing *Schnorr v. Bowen*,

816, F.2d 578, 582 (11th Cir. 1987)).  Opinions that are dispositive of the case; i.e. that would direct the determination or decision of disability, are reserved to the Commissioner. 20 C.F.R. § 404.1527(d).  An opinion about whether Plaintiff is disabled is not a medical opinion entitled to significant weight because that issue is dispositive of the case.  *See, Hutchinson v. Astrue,* 408 F. App.'x 324, 327 (11th Cir. 2011).  Thus, the undersigned finds that the ALJ had good cause to discount Dr. Holmes' opinion, and his decision was supported by substantial evidence.  Accordingly, the Court concludes the ALJ properly considered and discounted the opinion of Dr. Holmes.

**B.  The ALJ did not err in concluding that the opinion of Dr. Shubair should be afforded no weight.**

Plaintiff argues the ALJ erred by failing to acknowledge the specialization of Dr. Shubair and by rejecting his medical opinion.  (Doc. 12) at 7-8.  Plaintiff contends that the opinions of Dr. Shubair are directly supported by his own examination findings as well as the findings of Plaintiff's other treating physicians.  *Id.* at 9.

Generally, the opinion of a specialist is entitled to more weight than the opinions of other non-specialists.  *See* 20 C.F.R. § 404.1527(c)(5).  However, the ALJ must always consider the medical opinions in the record together with the rest of the relevant evidence received.  *Id.* § 404.1527(b).  While specialists generally are entitled to more weight, when there are internal inconsistencies, the specialist's opinion deserves less deference.  *See Kerwick v. Comm'r of Soc. Sec.*, 154 F. App'x 863, 864 (11th Cir.2005).  If the opinion of the physician is not supported by medically acceptable clinical and laboratory diagnostic techniques, the ALJ need not give it controlling weight.  *See* 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ properly afforded Dr. Shubair's medical opinion "no weight" because his opinion was inconsistent with the weight of the record in its entirety. Substantial evidence supports this conclusion. The ALJ noted that Dr. Brown, Plaintiff's first pulmonologist, referred Plaintiff to another pulmonologist, on April 22, 2014, but Plaintiff did not see Dr. Shubair until October 13, 2015—some eighteen months later. (R. 18). The ALJ described in substantial detail the various inconsistencies between Dr. Shubair's diagnosis with both his own examinations and the record as a whole. *Id.* at 18-19.

For example, at Plaintiff's first visit with Dr. Shubair on October 13, 2015, Dr. Shubair reported a normal blood pressure of 111/76, normal breath sounds and good air movement, no wheezing, rales, or rhonchi and normal heart rate and rhythm. (R. 769-76). Yet despite reporting an unremarkable examination, he diagnosed severe COPD, pulmonary hypertension, and congestive heart failure. *Id.* Just nine days later, on October 22, 2015, Plaintiff was examined by Dr. Shinkle who reported normal respiratory function with unlabored breathing and no edema or cyanosis. (R. 788).

The ALJ also found that subsequent examinations by other treating physicians were also inconsistent with Dr. Shubair's diagnosis. For example, on January 18, 2016, Plaintiff was seen by Dr. Stewart (R. 737-40). Dr. Stewart's physical examination reported unlabored breathing with normal breath sounds throughout and regular heart rate and rhythm with no murmurs, gallops, or rubs, marked lower extremity edema, and normal spinal range of motion. *Id.* Dr. Stewart diagnosed lower extremity edema, but not COPD, bronchitis, or pulmonary hypertension. *Id.* Plaintiff was seen by Dr. Holmes one week later on January 25, 2016. (R. 758-61). Dr. Holmes noted unlabored breathing and normal

breath sounds without rhonchi, rales, or rubs as well as normal heart rate and rhythm with no murmurs, rub, or gallop. *Id.* Dr. Holmes diagnosed pulmonary hypertension, but not COPD, bronchitis, or asthma. *Id.* Yet, when Plaintiff was seen aby Dr. Shubair eight days later, on February 2, 2016, Dr. Shubair recorded decreased breath sounds and diminished air movement. (R. 764-76). Dr. Shubair diagnosed severe COPD, pulmonary hypertension, and congestive heart failure. *Id.* Further inconsistencies are noted in the record. *See* discussion *supra* Part V.

The ALJ also found inconsistences with the two MSSs completed by Dr. Shubair— seemingly completed on the same date and just nine days after being notified of her hearing date. (R. 19). For example, one claimed Plaintiff could not perform work at any exertional level while the other claimed Plaintiff could occasionally lift and/or carry up to twenty pounds and sit for two hours and stand/walk for two hours in an eight-hour work day. *Id.* The ALJ also noted that Plaintiff ceased treatment with Dr. Shubair after obtaining his MSSs. *Id.*

Thus, the undersigned finds that the ALJ had good cause to discount Dr. Shubair's opinion, and his decision was supported by substantial evidence. Accordingly, the Court concludes the ALJ properly considered and discounted the opinion of Dr. Shubair.

## C. The ALJ did not err in determining Plaintiff's Residual Function Capability.

Plaintiff argues that the ALJ erred by improperly acted as both Judge and medical doctor when he determined that Plaintiff could perform work activities that exceeded the opinions of her treating physicians. Doc. 12 at 10. Plaintiff asserts that by making his own medical findings, the ALJ arbitrarily substituted his own hunch or intuition for the

diagnosis of a medical professional. *Id.*

An ALJ does not assume the role of a doctor when assessing a claimant's RFC, and an ALJ is not required to base his or her RFC finding on a doctor's opinion. *See Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007). The determination of a claimant's RFC is an administrative assessment, not a medical one, and the final responsibility for assessing a claimant's RFC rests with the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(a), 416.927(e)(2), 416.945(a)(3), 416.946(a); SSR 96-8p; *Castle*, 557 F. App'x at 853. An ALJ's RFC assessment may be supported by substantial evidence, even in the absence of any examining medical source opinion addressing Plaintiff's functional capacity. *Green*, 223 F. App'x at 923. Thus, an ALJ does not need a medical source opinion to inform his RFC finding and may properly base his RFC finding on his evaluation of the non-medical and medical evidence of record.

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has provided a sufficient rationale to link substantial record evidence to the conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citation and internal quotation marks omitted). There is no requirement that the RFC determination "be supported by the assessment of an examining or treating physician." *Id.* at 1055–56. Nor is it required for the ALJ to "specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r Soc. Sec.*

*Admin.*, 542 F. App'x 890, 891–92 (11th Cir. 2013).

Here, the ALJ extensively discussed the substantial evidence which supported his assessment. (R. 15-22). In formulating Plaintiff's RFC, the ALJ considered the relevant medical evidence of record, Plaintiff's testimony, and her reported daily activities. *Id.* For example, the ALJ noted that Plaintiff cares for and has full custody of her six-year-old autistic granddaughter; an activity that would seemingly require physical abilities at or above those necessary for obtaining and maintaining employment. (R. 21)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. *Id.* However, the ALJ determined that the intensity, persistence, and limiting effects of her symptoms were not enough to limit her functioning in the workplace entirely. *Id.* The ALJ also noted that at several of Plaintiff's appointments, Plaintiff was counseled on how her obesity contributed to her impairments and she was advised to switch to a low sodium and low carb diet, engage in regular exercise, and cease excessive sweet tea consumption. (R. 21-22). There is no evidence in the record, though, that Plaintiff adhered to this advice. Refusal to follow prescribed medical treatment without a good reason may preclude a finding of disability. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).

Thus, the ALJ provided enough reasoning for the Court to conclude that he considered Plaintiff's medical condition as a whole. Accordingly, the court finds that the ALJ provided more than a sufficient basis to link substantial record evidence to his conclusion that Plaintiff could perform a range of light work.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the

Court AFFIRMS the Commissioner's decision.

A separate judgment will be entered.

DONE this 26th day of March, 2019.


/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE